1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MONICA YOSHIDA, individually and on behalf of others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>VISTA ENERGY MARKETING LP, a Texas limited partnership; IRISH MARKETING LLC, a Texas limited liability company; RANSLEM CAPITAL LP, a Texas Limited partnership; WHALE FAMILY INVESTMENTS LP, a Texas limited partnership; DAVID RANSLEM, an individual' MICHAEL WHALEN, an individual; RETHINK DIRECT INC., a Pennsylvania corporation; KENNY MCGUFFEY, an individual; TRAVIS SMITH, an individual; and DOES 1–25,000, inclusive,<br><br>Defendants. | No. 2:20-cv-01944-TLN-CKD<br><br><br><br>**ORDER** |

This matter is before the Court on Defendants Vista Energy Marketing L.P. ("Vista") and Irish Marketing, LLC's ("Irish Marketing") (collectively, "Defendants") Motion to Compel Arbitration and Stay Litigation. (ECF No. 17.) Plaintiff Monica Yoshida ("Plaintiff") filed an opposition. (ECF No. 20.) Defendants filed a reply. (ECF No. 35.) For the reasons set forth below, the Court GRANTS Defendants' motion. Also pending before the Court is a Motion to

Dismiss by Vista (ECF No. 19)~~,~~ and a Motion to Dismiss by Defendant Whale Family Investments LP (ECF No. 18).  For the reasons set forth below, the motions to dismiss are DENIED as moot.

        **I.**        **FACTUAL AND PROCEDURAL BACKGROUND**

Vista is an energy company that supplies natural gas and electricity to residential customers in nine states and to commercial customers in fourteen states, including California. (ECF No. 17 at 10.)  Irish Marketing is Vista's sole general partner.  (*Id.*)

Pursuant to California regulations, Vista operates as a Core Transport Agent ("CTA"), supplying natural gas to customers serviced by California's public utilities.  (*Id.*)  This program, initiated by the California Public Utilities Commission ("CPUC"), is referred to as the Core Gas Aggregation Service.  (*Id.*)  Pacific Gas and Electric Company ("PG&E") is the natural gas utility company in Northern and Central California.  (*Id.*)  Twenty or so CTAs, including Vista, provide gas to residential users in PG&E's service areas.  (*Id.*)

On March 19, 2019, Plaintiff enrolled in Vista's "Unlimiday" program (the "Program") offering unlimited gas usage for 99 cents per day.  (*Id.*)  To enroll, Plaintiff visited a secure webpage on which she clicked several boxes, including a box authorizing Vista to obtain natural gas on her behalf under the Core Gas Aggregation Service.  (*Id.*)  Plaintiff signed her name on the screen stating that she confirmed authorization to begin service, and then clicked "submit enrollment."  (*Id.*)  That same day, Plaintiff received a link allowing her to review her completed Letter of Authorization ("LOA").  (*Id.*)

On March 21, 2018, Vista mailed Plaintiff a welcome letter to the billing address on file with PG&E and enclosed its Standard Terms and Conditions of Service ("T&Cs").  (*Id.*)  The T&Cs included a mandatory arbitration clause (the "Arbitration Agreement").  (*Id.*)  The T&Cs also included a provision that stated any and all claims must be arbitrated on an individual basis (the "Class Action Waiver").  (ECF No. 35 at 3.)  Plaintiff denies receiving these documents. (ECF No. 20 at 11.)

Plaintiff initiated this purported class action in Sacramento County Superior Court on March 18, 2020, and filed a first amended complaint ("FAC") on June 30, 2020 asserting fifteen

causes of action.  (ECF No. 1.)  Vista and Irish Marketing removed the case to this Court on September 28, 2020.  (*Id.*)  In the instant motion to compel arbitration, Vista and Irish Marketing argue the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1, *et seq.*, governs the Arbitration Agreement.

## II. STANDARD OF LAW

In deciding whether to compel arbitration, a district court typically determines two gateway issues: (1) whether a valid agreement to arbitrate exists; and (2) if it does, whether the agreement encompasses the dispute at issue.  *Lifescan, Inc. v. Premier Diabetic Servs., Inc.*, 363 F.3d 1010, 1012 (9th Cir. 2004).  "To evaluate the validity of an arbitration agreement, federal courts 'should apply ordinary state-law principles that govern the formation of contracts.'"  *Ingle v. Circuit City Stores, Inc.*, 328 F.3d 1165, 1170 (9th Cir. 2003) (citing *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)).  If the court is "satisfied that the making of the arbitration agreement or the failure to comply with the agreement is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement."  9 U.S.C. § 4.  "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration."  *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983).  If a court "determines that an arbitration clause is enforceable, it has the discretion to either stay the case pending arbitration, or to dismiss the case if all of the alleged claims are subject to arbitration."  *Hoekman v. Tamko Bldg. Prod., Inc.*, No. 2:14-cv-01581-TLN-KJN, 2015 WL 9591471, at *2 (E.D. Cal. Aug. 26, 2015) (citation omitted).

## III. ANALYSIS[1]

Defendants argue: (1) the Arbitration Agreement is valid and enforceable; (2) the Arbitration Agreement is not unconscionable; (3) as a result of the Class Action Waiver, Plaintiff must arbitrate her claims individually; and (4) the Court should stay, or alternatively dismiss, this action.  (ECF No. 17.)  The Court will address these arguments in turn.

---

[1]   Plaintiff requests judicial notice of various documents.  (ECF No. 21.)  The Court has reviewed Plaintiff's request as well as the attached documents.  Because the Court need not rely on these documents to come to its decision, it declines to address Plaintiff's request.

3

A. <u>Arbitration Agreement</u>

In determining whether to compel arbitration under the FAA, the Court must engage a two-step inquiry. First, the Court must determine whether a valid agreement to arbitrate exists. *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000). Second, if it does, the Court then must look to see if the agreement encompasses the dispute at issue. *Id.* If the answer to both questions is "yes," then the Court must enforce the arbitration agreement. *Id.*

i. *Valid Agreement*

Defendants argue a valid agreement exists because Plaintiff received the Arbitration Agreement and consented to the Arbitration Agreement by continuing service. (ECF No. 17 at 16.) Plaintiff argues a valid agreement does not exist because: (1) the parties did not enter into a contract because the LOA was not a contract and the agreement as a whole was fraudulently induced; (2) she denies receiving the Arbitration Agreement in the mail; and (3) there was no meeting of the minds as to the Arbitration Agreement. (ECF No. 20 at 11.)

a. <u>The LOA and Fraudulent Inducement</u>

Plaintiff argues the only document she signed was the LOA, which was not a contract. (ECF No. 20 at 10.) However, Plaintiff concedes that she entered into an oral contract with Defendants. (*Id.* at 8; ECF No. 1-1 ¶¶ 129–39 (bringing claims against Defendants for breach of oral contract).) Plaintiff appears to argue that the oral contract in its entirety is not valid because it was fraudulently induced. However, this question must be decided by an arbitrator. *See Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 726 (9th Cir. 1999) (finding questions of whether fraud in the inducement of the agreement as a whole were questions for the arbitrator); *Santana Row Hotel Partners, LP v. Zurich Am. Ins. Co.*, No. C 05-00198 JW, 2007 WL 914464, at *2 (N.D. Cal. Mar. 20, 2007) (determining that a fraudulent inducement claim that runs to the entire contract, and not specifically the arbitration provision, must be decided by the arbitrator). Accordingly, this argument is not a basis upon which to deny Defendants' motion to compel arbitration.

b. <u>Mailbox Rule</u>

Plaintiff argues she did not receive the Arbitration Agreement, and thus there could be no

agreement. Whether the parties entered into a valid and enforceable arbitration agreement is determined by California contract law. *See Circuit City Stores, Inc. v. Najd*, 294 F.3d 1104, 1108 (9th Cir. 2002). Under California law, a valid contract exists only if both parties consent to the contract. *United States ex rel. Oliver v. Parsons Co.*, 195 F.3d 457, 462 (9th Cir. 1999). The common law mailbox rule creates a presumption of mail receipt unless the intended recipient can rebut the presumption by actual, credible evidence of non-receipt, which requires more than a bare statement of denial. *See Schikore v. BankAmerica Sup. Ret. Plan*, 269 F.3d 956, 961 (9th Cir. 2001) (noting that the mailbox rule is intended to avoid "swearing contests" between parties on the question of receipt by mail); *see also James v. Comcast Corp.*, No. 16-CV-02218(EMC), 2016 WL 4269898, at *2 (N.D. Cal. Aug. 15, 2016) (holding that the mailbox rule renders bare denial of receipt insufficient to prove non-receipt of an arbitration agreement); *but see Chavez v. Bank of Am.*, No. C-10-653(JCS), 2011 WL 4712204, at *9 (N.D. Cal. Oct. 7, 2011) (holding that denial of receipt of an arbitration agreement in addition to evidence of an incorrect mailing address is, "although a close question," sufficient to rebut the mailbox rule presumption of receipt).

In the instant case, Defendants provide a declaration by Boyd Eriksen, the Vice President of Regulatory Affairs at Vista, to prove Vista mailed the T&Cs and thus the Arbitration Agreement to Plaintiff. (*See* ECF No. 17-2.) Eriksen states that Plaintiff visited a secure website and authorized Vista to obtain gas on her behalf under PG&E's tariffs for the Core Gas Aggregation Service. (*Id.* at ¶ 10.) She proceeded to sign her name on the screen stating she confirmed authorization to begin service and clicked "submit enrollment." (*Id.*) Defendants attach Plaintiff's enrollment form as evidence. (*See id.* at 6.) According to Erikson, on March 21, 2018, Vista mailed a welcome letter to Plaintiff at the billing address on file with PG&E and enclosed its standard T&Cs which included the Arbitration Agreement and Class Action Waiver. (*Id.* at ¶¶ 12, 13.) Defendants include as exhibits the address on file as well as the T&Cs. (*Id.* at 8–15.) Erikson states that a third-party service prints, processes, and mails all of Vista's welcome letters by using a standard mail-merge format. (*Id.* at ¶ 15.) Moreover, he states that the T&Cs are available on Vista's website. (*Id.* at ¶ 16.)

1    Plaintiff objects to Defendants' inclusion of Eriksen's declaration pursuant to Federal

2    Rules of Evidence 602, 701, and 801 *et seq*., stating that "he does not have personal knowledge of

3    this purported mailing by the unnamed third party.  Defendants failed to submit any documentary

4    evidence or even a declaration from the third-party mailer."  (ECF No. 26 at 2.)

5    Courts within the Ninth Circuit have found similar evidentiary support to a mailing

6    sufficient under the mailbox rule to create a presumption of mail receipt.  *See, e.g.*, *Wright v.*

7    *Sirius XM Radio Inc.*, No. SACV-15-01688-JVS (JCGx), 2017 WL 4676580, at *2 (C.D. Cal.

8    Jun. 1, 2017) (overruling plaintiff's objections to vice president of company's declaration finding

9    declarant had sufficient knowledge to testify to third-party vendor communications); *Derderian v.*

10   *Sw. & Pac Specialty Fin., Inc.*, No. 14-cv-412-L KSC, 2014 WL 6980525, at *4, *6 (S.D. Cal.

11   Dec. 8, 2014) (finding sufficient evidence of "its business practice to engage third-parties to

12   print" absent declaration from a third-party mailer) *aff'd*, 673 F. App'x 736 (9th Cir. 2016).

13   Similar to the declarant in *Wright*, Erikson is the Vice President of Regulatory Affairs,

14   and states that in his role he has "personal knowledge" of the third-party mailing practices.  (ECF

15   No. 17-2 at 2.)  Accordingly, the Court overrules Plaintiff's objections.  The Court finds

16   Defendants have created a presumption of mail receipt which Plaintiff has failed to rebut.

17                                              c.    Meeting of the Minds

18   Plaintiff argues that because Vista allegedly mailed the Welcome Letter and T&Cs to

19   Plaintiff two days after enrolling in the Vista Program, they attempted to change the contract after

20   its formation, and thus there was no "meeting of the minds" and a valid contract does not exist.

21   (ECF No. 20 at 7.)  Defendants argue that courts have found such provisions enforceable and

22   Plaintiff assented to arbitration by continuing the service.  (ECF No. 35 at 5.)

23   The Ninth Circuit has found that receiving an agreement and continuing service is

24   sufficient to show assent to the agreement.  *See Murphy v. DirecTV, Inc.*, 724 F.3d 1218, 1225 n.4

25   (9th Cir. 2013) ([T]he district court's finding that [p]laintiffs received the Consumer Agreement

26   and continued to accept DirecTV's services is not clearly erroneous and its conclusion that these

27   actions bound Plaintiffs to the terms of the contract is correct.").  Here, Plaintiff was able to

28   terminate her contract at any time without paying an early termination fee or penalty.  (ECF No.

1    17-2 ¶¶ 12, 17–18.)  Plaintiff, however, continued her service for approximately five months after

2    services commenced.  (ECF No. 35 at 6.)  Plaintiff's failure to cancel her contract demonstrates

3    that Plaintiff assented to the agreement.  Accordingly, the Court finds a valid agreement to

4    arbitrate exists.

5                    ii.    *Agreement Encompasses Plaintiff's Claims*

6           Once the moving party has shown the existence of a valid agreement to arbitrate, the party

7    resisting arbitration bears the burden of proving the dispute does not fall within the scope of the

8    arbitration provision.  *Green Tree Fin. Corp.-Alabama v. Randolph*, 531 U.S. 79, 91 (2000).

9    Arbitration provisions are construed broadly, and any doubts are resolved in favor of arbitration.

10   *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24–25.  "[T]o require arbitration [an aggrieved party's]

11   factual allegations need only touch matters covered by the contract containing the arbitration

12   clause. . . ."  *Simula, Inc.*, 175 F.3d at 721 (internal quotation marks omitted).

13          Defendants argue that the Arbitration Agreement on its face encompasses Plaintiff's

14   claims.  (ECF No. 17 at 19.)  The Arbitration Agreement purports to cover "[a]ny claim, dispute

15   or controversy . . . arising out of relating to this Agreement or the relationships among the parties

16   hereto[.]"  (ECF No. 17-2 at 13.)  To the extent Plaintiff argues that the Arbitration Agreement

17   does not cover her claims because she seeks public injunctive relief under various California

18   laws, the Court finds she does not actually seek injunctive relief, but rather compensation for the

19   alleged injury for herself and those allegedly similarly situated.  (*See* ECF No. 1-1 ¶¶ 306, 320–

20   22, 326, 330, 334.)  These types of damages "do[] not constitute public injunctive relief."  *McGill*

21   *v. Citibank, N.A.*, 2 Cal. 5th 949, 955, 957 n.1 (2017) ("[C]ompensatory, monetary and punitive

22   damages, and injunctive relief in the form of restitution . . . do not constitute public injunctive

23   relief.").  Plaintiff has not adequately provided any other argument for why the Arbitration

24   Agreement does not encompass Plaintiff's claims, and accordingly, the Court finds that it does.

25            B.  Unconscionability

26          California courts apply a "sliding scale" analysis in making determinations of

27   unconscionability: "the more substantively oppressive the contract term, the less evidence of

28   procedural unconscionability is required to come to the conclusion that the term is unenforceable

and vice versa." *Kilgore v. Keybank, Nat'l Ass'n*, 673 F.3d 947, 963 (9th Cir. 2012) (quoting *Armendariz v. Found. Health Psychcare Servs., Inc.*, 24 Cal. 4th 83, 114 (2000)).  "No matter how heavily one side of the scale tips, however, both procedural and substantive unconscionability are required for a court to hold an arbitration agreement unenforceable." *Kilgore*, 673 F.3d at 963 (quoting *Armendariz*, 24 Cal.4th at 89).  The Court must apply this balancing test to determine if the arbitration agreement is unenforceable.  As the party opposing arbitration, Plaintiff bears the burden of proving unconscionability by a preponderance of the evidence. *Engalla v. Permanente Med. Grp., Inc.*, 15 Cal. 4th 951, 972 (1997).

Plaintiff argues that there are four bases for finding the Welcome Letter and T&Cs, and subsequently the Arbitration Agreement, unconscionable: (1) the T&Cs do not state the cost of gas and purport to allow Vista to change the price in violation of the California Public Utilities Code; (2) Vista claims that customers must complain to the CPUC before filing a civil complaint; (3) the T&Cs unlawfully state a term of 24 months; and (4) Vista wrongfully attempts to limit its liability to actual damages. (ECF No. 20.) The Court will address each of Plaintiff's arguments in turn.

### i.  T&Cs

Plaintiff argues that the T&Cs violate Cal. Pub. Util. Code § 986(a) — which requires Vista to provide customers with a written notice of the service clearly describing the price. (ECF No. 20 at 12–13.).[2]  "[C]ontracts that are contrary to express statutes or to the policy of express statutes . . . are illegal contracts . . . Any such illegality voids the entire contract." *Green v. Mt. Diablo Hopsital District*, 207 Cal. App. 3d 63, 73 (1989) (citing Civ. Code §§ 1667(1)–(2)). Moreover, "[I]f an otherwise enforceable arbitration agreement is contained in an illegal contract, a party may avoid arbitration altogether." *Moncharsh v. Heily & Blasé*, 3 Cal. 4th 1, 29 (1992)

Cal. Pub. Util. Code § 986(a) states, in relevant part, that a "core transport agent offering

---

[2] Defendant requests the Court take judicial notice of the "Decision on Phase Two Issues Regarding Core Transport Agents" before the Public Utilities Commission of the State of California ("CPUC Decision of Phase Two").  (ECF No. 35 at 9.)  The Court may take judicial notice of documents in a public record.  *See Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010); *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001).  The Court accordingly takes judicial notice of this document.

gas service to core gas customers shall, prior to the commencement of service, provide the potential customer with a written notice of the service describing the price, terms, and conditions of the service." It further requires the T&Cs to include "[t]the price of gas expressed in a format that makes it possible for core gas customers to compare and select among similar products and services on a standard basis," and that the total price of gas should be disclosed on a "cents-per therm basis." *Id.* at § 986(a)(1)(A).

Plaintiff states that the T&Cs listed the price for natural gas at $0.6019 per therm, even though Vista offered Plaintiff a fixed price for unlimited usage. (ECF No. 20 at 12–13.) This, Plaintiff maintains, violated the Public Utilities Code, and thus, makes the T&Cs void in their entirety. (*Id.*) The T&Cs, however, state that the estimated costs are "$0.6019 cents per therm" with the "[a]verage price based on usage level of 50 therms per month." (ECF No. 17-2 at 11.) Importantly, the section of the T&Cs listing the price at $0.6019 per therm has an asterisk that points to a section in the T&Cs that states that "if your price plan includes fixed charges, your average price may vary based on your usage level." (*Id.*) In the same enumerated section of the T&Cs that includes the reference to "$0.6019 cents per therm," the T&Cs also state that "recurring charges are for the following kinds of charges: $0.99/Day for all usage." (*Id.*) The T&Cs have an entire heading titled "Your Price of Gas" which outlined the total estimated costs based on monthly usage. The T&Cs further include a table with what Plaintiff's costs would be dependent on her usage.

Plaintiff's opposition fails to explain how the T&Cs do not comply with the California Public Utilities Code's requirement for "estimates of the total monthly bill for the gas service at varying levels of consumption." Cal. Pub. Util. Code § 986(a)(1)(A). Moreover, Plaintiff fails to explain how the T&Cs' statement that the "average price may vary" is unlawful under the statute. In reviewing the T&Cs, the Court finds that they provide customers with "[a] clear description of the price . . . including . . . the price of gas expressed in a format that makes it possible for core gas customers to compare and select among similar products and services. . . ." *Id.* at § 986(a)(1)(A)

///

1  Any argument by Plaintiff that Vista breached the agreement by failing to charge Plaintiff
2  the amount shown is a claim for the arbitrator. (ECF No. 20 at 13.)

                              *ii.*      *Pre-Suit Agreement Requirement*

Plaintiff states that in violation of Cal. Pub. Util. Code § 983(b), Defendants require an aggrieved customer to first resolve an issue with the CPUC prior to filing a civil complaint. (ECF No. 20 at 14–15.) Defendants state that this argument is unpersuasive as the statute does not directly state that a CTA and its customers cannot agree to arbitrate. (ECF No. 35 at 9.)

Section 983(b) states, in relevant part, that "core gas customers shall have the option to proceed with a complaint against a core transport agent either through an action filed in the judicial court system or through a complaint filed with the commission." The direct language of the statute does not, however, bar arbitration agreements between CTAs and their customers. Moreover, the Court is unaware of — and the parties do not point to any — decisions in this Circuit finding § 983(b) limits the ability of parties to arbitrate claims.

Further, in *AT&T Mobility v. Concepcion*, 523 U.S. 333, 341, 343 (2011), the Supreme Court outlined that "[w]hen state law prohibits outright arbitration of a particular type of claim" or "stand[s] as an obstacle to the accomplishment" of the objective of the FAA, "the analysis is straightforward: The conflicting rule is displaced by the FAA." Even if the Court were to accept Plaintiff's reading of the statute, any prohibition to arbitration within the Code is preempted by the FAA. Plaintiff has not made a showing of unconscionability as to this argument.

                              *iii.*      *24-Month Term*

Plaintiff argues that the T&Cs include a provision that required Vista to be Plaintiff's "gas provider for a period of 24 months." (ECF No. 20 at 15.) Plaintiff states that this is unconscionable because a binding tariff on Vista incorporated into the Core Gas Aggregation Services Agreement states that any initial term length will be 12 months. (*Id.*) Defendants state that a 24-month term cannot be unconscionable since the LOA and Welcome Letter stated that the term was for 12 months, Plaintiff could cancel without penalty, and she did cancel without penalty. (ECF No. 35 at 10.)

///

10

1     Here, Plaintiff received a Welcome Letter stating her term to be 12 months. (ECF No. 17-
2  2 at 8.) The T&Cs state Plaintiff agreed to allow Vista "to be [her] gas provider for a period of 24
3  months," but further states that should she decide to cancel the agreement, she would "have to
4  pay an early termination fee of . . . [$]0.00." (*Id.* at 10.) It cannot be that Plaintiff was forced
5  into a 24-month term when she had the opportunity to cancel her contract without penalty.
6  Plaintiff has failed to show that this provision is unconscionable.

7                         iv.    *Limitation of Liability*

8     Plaintiff argues that Vista wrongfully attempts to limit its liability in the T&Cs by stating
9  that they are only liable for actual damages. (ECF No. 20 at 16.) Defendants contend this
10 argument must fail, as the primary relief sought in the FAC is actual damages (a refund), which
11 does not fall within the limitation of liability clause. (ECF No. 35 at 10.) Further, Defendants
12 state an offending limitation of liability provision does not render an entire agreement or
13 arbitration provision unconscionable. (*Id.*)

14    In light of the fact that Plaintiff only asserts a claim for actual damages, she has not
15 explained why she has raised this argument. Moreover, courts within this Circuit have held that
16 offending limitations of liability do not render an entire arbitration provision void or the
17 agreement unconscionable. *See, e.g.*, *McKee v. Audible, Inc.*, No. CV 17-1941-GW(EX), 2017
18 WL 4685039, at *14 (C.D. Cal. Jul. 17, 2017) ("[A]part from the offending limitation of liability
19 provision, the Amazon COU and Audible COU are not unconscionable and are enforceable."). If
20 the liability provision is in fact offending, the Court can "sever that provision without disturbing
21 the rest of the agreement." *Id.* at 13.

22    Accordingly, Plaintiff has not met the burden of proving unconscionability by a
23 preponderance of the evidence.

24              C.  Class Action Waiver

25    Defendants argue that the T&Cs contain an unambiguous class action waiver clause
26 stating "[a]ny claim must be brought in the parties' individual capacity, and not as a plaintiff or
27 member in any purported class, collective, representative multiple plaintiff, or similar
28 proceeding." (ECF No. 17-1 at 13.) Plaintiff states she never agreed to the Class Action Waiver

1  and thus this waiver fails for the same reasons the Arbitration Agreement fails. (ECF No. 20 at

2  25.) As the Court finds that the Arbitration Agreement is valid and enforceable, Plaintiff's

3  arguments here are unpersuasive. The Class Action Waiver is therefore similarly valid and

4  enforceable.

5                  D.  Stay

6      Defendants request the Court "stay proceedings for claims and issues 'referable to

7  arbitration' pending resolution of the arbitration." (ECF No. 17-1 at 15 (quoting *Blair v. Rent-A-*

8  *Ctr., Inc.*, 928 F.3d 891, 832 (9th Cir. 2019).) Plaintiff's sole argument against a stay is that

9  arbitration is not appropriate. The Court disagrees with Plaintiff and will stay the case pending

10  resolution of arbitration.

11      **IV.**  **CONCLUSION**

12      For the foregoing reasons, the Court GRANTS Defendant's Motion to Compel Arbitration

13  (ECF No. 17) and STAYS the case pending completion of arbitration of Plaintiff's individual

14  claims. The parties shall notify the Court within thirty (30) days of completing arbitration.[3] The

15  Court also DENIES as moot the Motion to Dismiss by Vista (ECF No. 19) and the Motion to

16  Dismiss by Defendant Whale Family Investments LP (ECF No. 18).

17      IT IS SO ORDERED.

18  **DATED: January 6, 2022**

19

20

21                                                

22                          Troy L. Nunley
                        United States District Judge

23

24

---

25  [3]   Pursuant to California law, the non-signatory agents of Defendants are compelled to
26  arbitrate as well. *See, e.g.*, *Thomas v. Westlake*, 204 Cal. App. 4th 605, 614–15 (2012)
("[A]llegations of an agency relationship among defendants is sufficient to allow the alleged
27  agents to invoke the benefit of an arbitration agreement executed by their principal even though
the agents are not parties to the agreement."). Accordingly, the Arbitration Agreement applies to
28  Defendants ReThink Direct, McGuffey, and Smith as alleged agents of Vista.